**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LAWRENCE WESTBROOK, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | C.A. No. 3:14-CV-2080-M |
| JAG INDUSTRIAL SERVICES, INC., DOUGLAS HUFF, and TIM JAGIELSKI, | § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion to Compel Arbitration filed by Defendants [Docket Entry #54], the Motion to Dismiss filed by Defendant JAG Industrial Services, Inc. [Docket Entry #24], the Motion to Dismiss filed by Defendants Douglas Huff and Tim Jagielski [Docket Entry #25], and the Motion to Certify Class filed by Plaintiff Lawrence Westbrook [Docket Entry #43]. For the reasons discussed below, the Motion to Compel Arbitration is **GRANTED**, and Plaintiff Westbrook may commence arbitration within 60 days of this Order. As a result, the Motion to Certify Class is **DENIED**, and the Motions to Dismiss are **DENIED** as moot. The Court retains jurisdiction to rule on Defendants' Objections to Judge Toliver's Order [Docket Entry #51], after which the case will be dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lawrence Westbrook ("Westbrook") brings this collective action on behalf of himself, and others similarly situated, against Defendants JAG Industrial

1

Services, Inc. ("JAG"), Douglas Huff, and Tim Jagielski, for alleged violations of the

Fair Labor Standards Act (FLSA).

## I.    Westbrook's Employment

JAG provides skilled labor and quality assurance for marine repair, shipbuilding,

and other industrial projects throughout the United States.[1]  Huff and Jagielski are

principals at JAG.[2]  Westbrook worked as a welder and fitter for JAG from October 22,

2012 until January 1, 2014.[3]  He worked in multiple locations, including Alvarado,

Texas; Sioux City, Iowa; Toledo, Ohio; Elwood City, Pennsylvania; and Seward,

Alaska.[4]

Westbrook was actually hired by AMS Staff Leasing ("AMS"), a licensed

professional employer organization (PEO) that leased employees to JAG according to the

terms of a professional employer services agreement executed by JAG ("Staff Leasing

Agreement").[5]  According to the Staff Leasing Agreement, JAG and AMS were "co-

employers," as that term is defined in the Staff Leasing Agreement and provided by law,

which means AMS leased Westbrook to JAG.[6]

---

[1] Dkt. No. 1 ¶ 8.
[2] *Id.* ¶ 6.
[3] *Id.* ¶ 5.
[4] *Id.*
[5] *See* Def. App. 3–4.  PEOs are regulated in Chapter 91 of the Texas Labor Code.  *See* Tex. Lab. Code §§ 91.001–91.063.  A "license holder," such as AMS, is required by statute to execute a written professional services agreement with clients such as JAG.  *See id.* § 91.031(a).  Written notice of the agreement is provided to each "covered employee."  *Id.* § 91.031(b).
[6] *See* Def. App. 3; *see also* Tex. Lab. Code. § 91.001(3-a) (defining "coemployer" as "a professional employer organization or a client that is a party to a coemployment relationship"); *id.* § 91.001(3-b) (defining "coemployment relationship" as a "contractual relationship between a client and a [PEO] that involves the sharing of employment responsibilities . . . in accordance with the professional employer services agreement and [Chapter 91 of the Texas Labor Code]").

Westbrook was an employee of AMS, but JAG was his on-site employer and directed his day-to-day activities.[7]  AMS paid Westbrook's wages, deducted taxes from his paycheck, and issued him a W-2 under AMS' tax identification number.[8]  As a condition of his employment with AMS, Westbrook also completed a signed application ("AMS Application"), which contained this arbitration clause:

> I agree that my sole recourse for resolving any dispute with AMS arising under my employment, including but not limited to wage claims, shall be to arbitrate such dispute.  Such arbitration shall be pursuant to the arbitration laws of the State of Texas and the rules, then obtaining, of the American Arbitration Association. Venue of any action shall be in Dallas County, Texas.  AMS is based in Dallas, Texas, and Applicant acknowledges that this Agreement is to be partially performed in Dallas, Texas.[9]

Defendants contend that each of the employees who have filed consents to become party plaintiffs in this suit also agreed to arbitrate their wage claims when they signed applications with AMS.[10]  Defendants were not signatories to the AMS Application or the arbitration provision contained therein.  However, Westbrook did specifically acknowledge the nature of his coemployment by initialing the AMS Application—he was an employee of AMS to be leased to a client company who would be his on-site employer and direct his day-to-day activities.[11]

---

[7] Def. App. 3 ¶ 9; Def. App. 15 ¶ I (AMS Application); *See* Tex. Lab. Code § 91.001(7-a) (defining "covered employee" as an "individual having a coemployment relationship with a [PEO] and a client"); *id.* § 91.0012 (requiring that a covered employee receive written notice of the coemployment relationship, and that the coemployment relationship be established pursuant to a professional employer services agreement).
[8] Def. App. 4 ¶ 11; Def. App. 8 ¶ 12(b) (providing that AMS agreed to pay wages to leased employees, except for wage obligations created by an agreement between JAG and the leased employee for which AMS did not contract to pay).  Under the Texas Labor Code, a PEO [i.e., AMS] is responsible for "the payment of wages to the covered employees without regard to payments by the client to the license holder [i.e. JAG]."  *See* Tex. Lab. Code § 91.032(a)(2).
[9] Def. App. 16 ¶ V.
[10] Defendants claim that AMS has ceased all staff leasing operations and remains in business to wind up its affairs.  Def.'s Mot. to Compel p. 3 n. 5.  However, Defendants contend that it was the regular practice of AMS to have each employee sign an identical arbitration provision.  Def. App. 3–4 (Decl. of Jennifer Hauger).
[11] Def. App. 15.

## II.     Westbrook's FLSA Allegations

Westbrook alleges that Defendants repeatedly and willfully violated the overtime provisions of the FLSA by not properly compensating him, and others similarly situated, for hours worked in excess of 40 hours per week.[12]  According to Westbrook, Defendants violated the FLSA by reducing Westbrook and others' per diem compensation in lieu of paying one and one-half times the regular hourly rate and maintaining the per diem compensation at the regular rate.[13]  For example, Defendants regularly paid Westbrook $10 per hour as wages and $16 per hour as per diem, totaling $26.00 per hour.[14] However, when Westbrook worked in excess of 40 hours per week, his overtime wage was allegedly increased to $15 per hour, but his per diem was reduced to $11 per hour, totaling $26.00 per hour, the same as his regular wage.[15]  Westbrook alleges that this scheme violates 29 U.S.C. § 207.[16]

On June 6, 2014, Plaintiff filed a Complaint alleging Defendants willfully violated the FLSA, and seeking certification of a collective action on behalf of himself and others similarly situated.[17]  For the next three months, at least 30 employees filed consents to join Westbrook's action against Defendants.[18]  On September 19, 2014, Defendants executed and filed a Waiver of Service of Summons.[19]  On October 20, 2014, Defendants filed their Consolidated Answer and Motions to Dismiss pursuant to Federal

---

[12] Dkt. No. 1 ¶ 17.
[13] *Id.* ¶ 23.
[14] *Id.*
[15] *Id.*
[16] *Id.  See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (holding an employer violated the FLSA because the per diem allowances were part of the employee's "renumeration for employment").
[17] Dkt. No. 1.
[18] *See* Dkt. No. 5 – Dkt. No. 18.
[19] Dkt. No. 19.

Rule of Civil Procedure 12(b)(6).[20]  Defendants alleged in their First Affirmative Defense

that Westbrook and others similarly situated to him, including those who had already

filed consents to join the suit, agreed in writing to arbitrate any dispute with JAG arising

from their employment, including wage claims.[21]  Defendants further contended that the

FLSA claims stemmed from employment with "the staff leasing company."[22]

On October 21, 2014, Defendants filed a Motion to Disqualify, for Sanctions, and

for Expedited Discovery ("Motion for Sanctions"), alleging that counsel for Westbrook

was improperly soliciting JAG's employees to join in this action.[23]  On November 12,

2014, Judge Toliver entered an Order denying Defendants' Motion and sanctioning

Defendants for failing to reasonably investigate their allegations.[24]  On November 25,

2014, Defendants filed their Objections to Judge Toliver's Order.[25]  Those Objections

remain pending before this Court.

On November 7, 2014, Plaintiff filed a Motion for Conditional Certification of

Collective Action.[26]  On December 2, 2014, the parties filed a Joint Report Regarding

Contents of Scheduling Order, in which Defendants reasserted their position that this

matter is arbitrable.[27]  Defendants also filed a Motion to Compel Arbitration and Dismiss

for Lack of Subject Matter Jurisdiction on December 2, 2014.[28]  Specifically, Defendants

allege that Westbrook signed an arbitration agreement with AMS which required him to

arbitrate any dispute arising from his employment with AMS.  Defendants argue that

---

[20] Dkt. No. 22; Dkt. No. 24; Dkt. No. 25.
[21] Dkt. No. 22 at 11–12 (First Affirmative Defense).
[22] *Id.*
[23] Dkt. No. 27.
[24] Dkt. No. 45.
[25] Dkt. No. 51.
[26] Dkt. No. 43.
[27] Dkt. No. 56 ¶¶ 1, 8, 13, 16–17, 19.
[28] Dkt. No. 54.

Westbrook should be equitably estopped from litigating his claims against Defendants in this Court because those claims are intertwined with his employment with AMS and Westbrook must rely on the AMS Application and Staff Leasing Agreement in asserting his claims against Defendants.  Because the class has yet to be conditionally certified, Defendants argue the entire case should be dismissed.[29]

On December 15, 2014, Plaintiff filed his Response, arguing that Defendants have waived their arbitration rights because of the extensive motion practice already underway in this Court and the substantial attorney's fees Plaintiffs have incurred thus far.

## ANALYSIS

The Court must first determine whether Defendants, as non-signatories to the AMS Application, may compel a signatory, Westbrook, to submit to arbitration.  If so, the Court must determine whether Defendants have nonetheless waived their right to arbitration.

### I.   Estoppel

Arbitration receives preferential treatment under the law.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Generally, an arbitration agreement must be in writing.  *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 894 (5th Cir. 2005) (citation omitted).  However, in limited situations, a non-signatory to an arbitration agreement can compel a signatory to that agreement to bring the signatory's claims in arbitration.  *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

---

[29] Dkt. No. 64.  Defendants bring to the Court's attention a related case, No. 3:13-cv-04375, *Anthony O'Bannon v. JAG Industrial Services, Inc.* (N.D. Tex. Apr. 21, 2014) (Boyle, J.), in which the plaintiff, represented by the same counsel as in this case, did not oppose the defendant's motion to compel arbitration pursuant to an identical arbitration provision.  Dkt. No. 13.  That case was ordered to arbitration and dismissed without prejudice. Dkt. No. 16.

In *Grigson*, the Fifth Circuit held that under a theory of equitable estoppel, a non-signatory may compel arbitration in two circumstances: (1) when a signatory to a written agreement must rely on the terms of that agreement in asserting its claims against the non-signatory, or (2) when a signatory to the contract makes allegations of substantially interdependent and concerted misconduct by the non-signatory and one or more signatories to the agreement. 210 F.3d at 527–28. The Court stated that principles of fairness dictate that a signatory should not be able to "have it both ways" by seeking to "hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 528 (citations omitted).

Westbrook is estopped under either theory. First, Westbrook is a signatory to the AMS Application, and he must rely on the AMS Application in asserting his claims against Defendants. Westbrook's employment relationship with JAG, and thus his contractual right to wages from JAG, was established in the AMS Application.[30] In the AMS Application, Westbrook specifically acknowledged that AMS was his employer and JAG, or another client of AMS, would be his on-site employer and direct his day-to-day activities.[31] Moreover, the arbitration provision in the AMS Application obligated Westbrook to arbitrate wage claims against AMS.[32]

The AMS Application did, however, contemplate the possibility that Westbrook might enter into a separate wage agreement with JAG.[33] Thus, at a minimum, Westbrook must rely on the AMS Application to show whether his wage claims are against AMS, or

---

[30] *See* Def. App. 15 ¶ I.
[31] *Id.*
[32] Def. App. 16 ¶ IV-V.
[33] *Id.* ¶ IV.

derive from a separate agreement between JAG and Westbrook.[34]   This is sufficient to show that Westbrook must rely on the terms of the AMS Application, which contains the arbitration clause, to assert his claims against the Defendants.  Westbrook has provided no argument or evidence to the contrary.

Westbrook is also estopped under the second *Grigson* theory—that Westbrook's FLSA allegations are, in fact, claims that Defendants and AMS engaged in substantially interdependent and concerted misconduct to deny Westbrook overtime pay.  Westbrook signed an arbitration agreement with AMS agreeing that his "sole recourse for resolving any dispute with AMS arising under [his] employment, including . . . wage claims, [would] be to arbitrate such dispute."[35] Pursuant to the Texas Labor Code, AMS had the obligation to pay wages to Westbrook, regardless of whether JAG paid AMS.  *See* Tex. Lab. Code § 91.032(a)(2).  Westbrook provides no evidence of any separate agreement with JAG for wages; therefore, his wage claims must derive from concerted misconduct by AMS and JAG.

Although Defendants were not signatories to the arbitration provision, it is clear that the AMS Application contemplated a wage arrangement by which AMS leased Westbrook to Defendants, Defendants supervised his day-to-day activities, and Defendants paid wages to AMS, which in turn, paid wages to Westbrook.[36]   Indeed, Westbrook's paycheck stubs indicate both JAG and AMS had responsibility for ensuring he received the appropriate wages.[37]   But for AMS' payment of wages to Westbrook, and

---

[34] *See id.* ¶¶ 4-5 (acknowledging that the client company is solely obligated to pay wages earned pursuant to a separate agreement between the covered employee and client company, and acknowledging that wage claims with AMS must be arbitrated).
[35] Def. App. 14 ¶ V.
[36] Def. App. 6 ¶ 3 ("[JAG] agrees to pay AMS in accordance with payroll plus applicable rate burden . . . [s]uch payment is due no later than date of payroll checks.").
[37] Def. App. 32–33.

AMS' Staff Leasing Agreement with Defendants, Westbrook would have no claims

against Defendants.  Therefore, Westbrook's FLSA claims are based on alleged

concerted misconduct by AMS and Defendants.[38]

This is precisely the type of case that, if not submitted to arbitration, would permit

Plaintiff to "have it both ways."  *See Grigson*, 210 F.3d at 528.  Because AMS bore the

obligation to pay Westbrook's wages, the arbitration provision in the AMS application

would be a nullity if Westbrook could instead litigate his wage claims against

Defendants.  Therefore, the Court finds that Westbrook is estopped from litigating his

wage claims in this Court, and is compelled to arbitrate those claims.[39]

## II.    Waiver

Plaintiff does not contest that he should be equitably estopped from pursuing his

FLSA claims in litigation, but instead argues that Defendants have waived their right to

arbitration.

"Waiver will be found when the party seeking arbitration substantially invokes

the judicial process to the detriment or prejudice of the other party." *Walker v. J.C.*

*Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (internal quotation marks and citation

omitted).  "There is a strong presumption against finding a waiver of arbitration, and the

party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic*

---

[38] Furthermore, the Staff Leasing Agreement executed by JAG and AMS included an indemnity clause, in which JAG agreed to indemnify and hold AMS harmless against all losses incurred by AMS "in connection with or in consequence of any act, error, or omission of [JAG] arising in any manner out of or in any way connected with or a result of [the] Staff Leasing Agreement." Def. App. 7 ¶ 8.  This provides further evidence that any misconduct, if it occurred, was the result of intertwined actions by Defendants and AMS. Presumably, covered employees arbitrate their wage claims against AMS, after which JAG indemnifies AMS for any losses.

[39] Other courts have resolved factually similar disputes in favor of compelling arbitration.  *See, e.g.*, *Fox v. Computer World Services Corp.*, 920 F.Supp.2d 90, 103–04 (D.D.C. 2013) (compelling plaintiff to arbitrate disputes with co-employer defendant under the doctrine of estoppel); *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 127 (2d Cir. 2010) (applying equitable estoppel to compel plaintiff to submit factually intertwined claims against non-signatory employer to arbitration).

*Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (citation omitted).

### A.  Invoking the Judicial Process

"To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010).  Further, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."  *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999).  The Fifth Circuit has resisted adopting a bright-line rule for invoking the judicial process, such as filing a motion to dismiss, and instead held that "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir.1985).  However, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (citation omitted).

Plaintiff argues that Defendants invoked the judicial process by filing a Motion for Sanctions and two Motions to Dismiss, none of which discussed whether Plaintiff's claims were subject to arbitration.  Plaintiff argues that it was Judge Toliver's denial of Defendants' Motion for Sanctions that prompted Defendants to file this Motion to Compel.

The Court has yet to rule on the Motions to Dismiss filed by Defendants, and as a result, there has been no decision on the merits of Westbrook's FLSA claims against Defendants.  Furthermore, Defendants argued that Westbrook's claim was subject to

arbitration in their First Affirmative Defense, which was filed in Defendants' Answer and concurrently with their Motions to Dismiss.  The filing of Motions to Dismiss under Rule 12(b)(6) does not, by itself, show an invocation of the judicial process sufficient to constitute waiver of an arbitration clause.  *See Keytrade USA, Inc.*, 404 F.3d at 897–98 (holding the defendant did not invoke the judicial process by filing a 100-page defensive summary judgment motion).

Defendants' Motion for Sanctions also does not show a desire to resolve Westbrook's claim through litigation.  Defendants sought only to impede the formation of a class and to disqualify Plaintiff's counsel.  Had Defendants been awarded all of the relief requested in their Motion for Sanctions, they still would have had to litigate Westbrook's FLSA claim and class certification.[40]  Given that Defendants asserted their First Affirmative Defense over three weeks before Judge Toliver's ruling on the Motion for Sanctions, the Court is not persuaded that a different ruling from Judge Toliver would have caused Defendants to forego arbitration.

## B. Prejudice

"In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before [a court] will find a waiver of the right to arbitrate." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009). "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Id.* (citation omitted).  "While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice." *Republic Ins. Co.*, 383 F.3d at 346 (internal quotation marks and citation omitted).

---

[40] *See* Dkt. No. 27 at ¶¶ 1–5.

Plaintiff claims that he has incurred $35,000 in attorney's fees litigating this dispute thus far, including $18,787.50 in fees responding to the Motion for Sanctions, and $13,000 in fees responding to Defendants' Motion to Set Aside Judge Toliver's Order. Plaintiff argues that these fees would not have been incurred in arbitration. Moreover, Plaintiff argues that this case has been heavily litigated during the six-month period since Plaintiff filed his Complaint, and therefore, were the Court to grant Defendants' Motion to Compel, Plaintiff would be prejudiced.

Without passing judgment on the reasonableness of the attorney's fees incurred by Plaintiff, the Court finds that Plaintiff may still be reimbursed for the fees incurred in defending the Motion for Sanctions because Judge Toliver awarded Plaintiff his attorney's fees in defending the Motion. Additionally, the Court notes that the Motion for Sanctions related to Plaintiff's efforts to establish a class, a procedural mechanism Plaintiff chose to invoke by filing his claim in this Court. Therefore, Plaintiff is correct that these fees would not have been incurred in arbitration; however, that is at least in part because Plaintiff would not have been able to pursue a collective action in arbitration.[41]

Furthermore, the Court does not find a six-month period since this case's inception to be so long as to constitute prejudice, especially where the Court has not ruled on Defendants' Motions to Dismiss or Plaintiff's Motion for Conditional Class Certification, and no discovery has been undertaken by the parties. *Compare Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416, 421 (5th Cir. 1985) (finding no prejudice

---

[41] Plaintiff's counsel also had notice of the AMS Application and arbitration provision. *See supra* p. 5 n. 28. In *Walker v. Countrywide Credit Industries, Inc.*, the court found no waiver, in part, because plaintiffs had notice that the defendant had successfully demanded arbitration against plaintiffs' counsel in another FLSA suit. No. 3:03-CV-0684, 2004 WL 246406, at *4–5 (N.D. Tex. Jan. 15, 2004).

where the defendant waited eight months before moving for arbitration and participated

in discovery in the meantime); *with Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d

1156, 1160 (5th Cir. 1986) (finding prejudice where the defendant took extensive

discovery, answered twice, obtained two extensions of pretrial deadlines, and filed

motions to dismiss *and* for summary judgment).  The only arguable prejudice suffered by

Plaintiff is the collateral Motion for Sanctions, and Plaintiff may conceivably be

reimbursed for those fees and costs.  Plaintiff has failed to otherwise show prejudice, and

has not shown prejudice sufficient to constitute waiver.

The Court finds that Defendants have not waived their right to arbitration,

therefore, Defendants' Motion to Compel Arbitration is **GRANTED**, and if he chooses,

Plaintiff may commence arbitration within 60 days of this Order.

## III.    Class Certification and Dismissal

Having determined that Westbrook's claim is subject to arbitration, the Court

**DENIES** Plaintiff's Motion for Conditional Certification.[42]  *See Genesis Healthcare*

*Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (holding that the "mere presence of

collective-action allegations in the complaint cannot save the suit from mootness once the

individual claim is satisfied"); *see Greene v. Subcontracting Concepts, L.L.C.*, No. 13

Civ. 01500(AJN), 2014 WL 1087999, at *5–6 (S.D.N.Y. Mar. 19, 2014) (granting

defendants' motion to compel arbitration of plaintiff's wage claims and denying

---

[42] Collective actions typically proceed in two stages:  (1) the plaintiff moves for conditional certification of his collective action, and the district court then determines whether to provide notice to fellow employees who may or may not be similarly situated to the named plaintiff; (2) after discovery, the employer may move to decertify the collective action, and the court determines whether there are similarly situated opt-in employees.  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008).  Here, employees have merely provided consents to opt-in, and thus are not plaintiffs with a cognizable interest that precludes dismissal.

plaintiff's motion for conditional certification as a result).  Defendants' Motions to

Dismiss are also **DENIED** as moot.

> **SO ORDERED.**

January 7, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

14